IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AIDA C. BORGOS-TABOAS, et al.

    Plaintiffs,

               v.

HIMA SAN PABLO HOSPITAL BAYAMON, et al.

    Defendants.

Civil No. 11-1328 (SEC)

**OPINION and ORDER**

Before the Court are defendants' ("Defendants") motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Docket # 16) and plaintiffs' ("Plaintiffs") opposition thereto (Docket # 36).[1] After reviewing the filings and the applicable law, Defendants' motion is **GRANTED**.

**Background**

On April 8, 2011, Plaintiffs, who are the widow and the three sons of late Robert J. Calvesbert, filed this federal question suit under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, as well as under the laws of Puerto Rico. Docket # 87. Among other things, Plaintiffs allege that Defendants' negligent emergency medical treatment caused Mr. Calvesbert's death. Id.[2] But because Mr. Calversbert died on September 22, 2008, Defendants moved to dismiss, arguing that Plaintiffs' suit runs afoul of EMTALA's two-year statute of limitations. Id. Plaintiffs opposed. Docket # 36. They were also granted leave to file two amended complaints, purportedly to include "a plethora of facts from which this Court can conclude that the EMTALA statute of limitations was tolled by about two months." Dockets # 79, p. 7 and 86,

---

[1] An active motion practice followed these motions. See Dockets # 41, 47, 57, 59, 60, 61, 75, 76, 103, 106, 107, and 113. This Opinion and Order addresses all of these submissions.

[2] Defendants are the hospital where Mr. Calversbert passed away and the doctors who treated him while he was there.

respectively. Plaintiffs' tolling argument in turn was premised on the proposition that the doctrine of equitable tolling stopped EMTALA's statute of limitations from running against them. Docket # 36. The allegations relevant to assess these contentions follow.

On September 20, 2008, Mr. Calvesbert, then 87 years old, suffered a generalized seizure episode at home. The next day, he was taken by private ambulance to the emergency room of co-defendant HIMA Bayamon. His wife and one of his sons accompanied Mr. Calvesbert to the hospital, where, after receiving subpar medical treatment, he died within 24 hours from cardiac and respiratory failure.

Plaintiffs obtained Mr. Calvesbert's medical records in due course and began looking for a medical expert who could produce an expert report. On the first anniversary of Mr. Calvesbert's passing, while Plaintiffs continued searching for an expert, co-plaintiff Paul E. Calvesbert (a practicing attorney) sent letters to Defendants intending to toll the applicable statutes of limitations. In pertinent part, the letters stated: "In addition to putting you on notice and informing you about [our] claims, this letter . . . . will also interrupt and toll any statute of limitations which may be applicable under applicable federal law, such as [EMTALA]." Docket 36-2. Plaintiffs submitted an affidavit with their opposition to Defendants' motion to dismiss also corroborating that

> [t]he purpose of the letters . . . was to toll . . . the two-year statute of limitations to file an EMTALA case against the hospital, while our family had more time to retain the services of an expert who after reviewing and analysing the medical records could submit a written report of his findings and opinions as to the existence of . . . an EMTALA case against the hospital.

Docket # 36-1.

On April 28, 2010, Plaintiffs finally retained a medical expert. And, while the expert prepared his report, Plaintiffs sent a second set of letters to Defendants with the intention of tolling once more the applicable statutes of limitations. On November 17, 2010, after various delays and upon Plaintiffs' insistence, the expert rendered his report, which Plaintiffs sent

to their attorney in mid December. Four months thereafter the present suit ensued.

**Standard of Review**

A motion to dismiss under rule 12(b)(6) premised on a statute of limitations affirmative defense may be appropriate if "the facts that establish the defense . . . [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003); Jones v. Bock, 549 U.S. 199, 215 (2007). In other words, even though a complaint need not plead facts to avoid potential affirmative defenses, plaintiffs could plead themselves "out of court by alleging facts that are sufficient to establish the defense." Hollander v. Brown, 457 F.3d 688, 691 n. 1 (7th Cir. 2006).

**Applicable Law and Analysis**

EMTALA is the result of congressional concern about reports that hospital emergency rooms, driven by their bottom line, were refusing to accept or treat patients with emergency medical conditions that lacked medical insurance. See Correa v. Hosp. San Francisco, 69 F.3d 1184, 1189 (1st Cir. 1995) (citing EMTALA's legislative record). To counter the evils associated with this practice, Congress enacted EMTALA, which "created a remedy for patients in certain contexts in which a claim under state medical malpractice law was not available." Reynolds v. MaineGeneral Health, 218 F. 3d 78, 83 (1st Cir. 2000). Accordingly, EMTALA complements but does not displace or substitute traditional state-law tort remedies for medical malpractice. Id. at 83-84 ("EMTALA is a limited 'anti-dumping' statute, not a federal malpractice statute.").

EMTALA therefore imposes two obligations on hospitals with emergency rooms: (1) that, once a patient arrives at their doorstep requiring treatment or examination, emergency rooms must provide the patient with an adequate medical screening examination; and (2) that if an emergency medical condition exists, the patient must be stabilized prior to either

discharge or transfer to another facility. Del Carmen Guadalupe v. Negron-Agosto, 299 F.3d 15, 19 (1st Cir. 2005) ("By its terms, EMTALA is designed to assure that any person visiting a covered hospital's emergency room is screened for an emergency medical condition and is stabilized if such condition exists"); Reynolds, 218 F.3d at 83 (stating that "at a minimum Congress manifested an intent that all patients be treated fairly"). Violations of any of these obligations give rise to a cause of action for any injuries the patient may suffer. § 1395dd(d)(2)(A).

An EMTALA cause of action does not last forever, however. Congress expressly provided a two-year statute of limitations counted from the date of the alleged violation. § 1395dd(d)(2)(C). Specifically, subsection (d)(2)(C) provides that "[n]o action may be brought under [EMTALA] more than two years after the date of the violation with respect to which the action is brought." Id. This language is unequivocal about the time of accrual for an EMTALA action—"*the date of the violation.*" Id. (emphasis added); see also Kizzire v. Baptist Health System, Inc., 441 F.3d 1306, 1310 (11th Cir. 2006) ("[A] civil action under EMTALA must be brought within two years of the date of the alleged violation."); Saltares v. Hosp. San Pablo, Inc., 371 F.Supp 2d 28, 33 (D.P.R. 2005) ("EMTALA claims accrue not when the aggrieved party gained knowledge of the injury but when the actual violation took place.").

As discussed above, Plaintiffs concede that their suit was filed more than two years after their EMTALA cause of action accrued. They nonetheless contend that their cause of action survives this fatal flaw due to the equitable tolling doctrine.[3] Equitable tolling "is a sparingly invoked doctrine that is used to excuse a party's failure to take an action in a timely manner, where such failure was caused by circumstances that are out of his hands." Dawoud

---

[3] Because EMTALA contains no tolling provision, the equitable tolling doctrine provides the only conceivable alternative in which its statute of limitations could be tolled. See Vogel v. Linde, 23 F.3d 78, 80 (4th Cir. 1994) ("The black-letter rule . . . is that a statute of limitations runs against all persons unless the statute expressly provides otherwise.")

v. Holder, 561 F.3d 31, 36 (1st Cir. 2009). But neither the United States Supreme Court nor any U.S. Circuit Court of Appeals has decided whether equitable tolling applies to EMTALA. At least two federal district courts have answered the question in the negative. See Saltares, 371 Supp. 2d at 34 ("EMTALA does not contain a tolling provision or otherwise provide for any exception to the two-year statute of limitations."); Brewer v. Miami County Hosp., 862 F.Supp. 305, 307-08 (D. Kan. 1994) ("[T]he legislative history, like the plain language of the statute, does not support a finding that principles of equitable tolling should be applied to the EMTALA statute of limitations.").[4] In this case, however, the Court need not address this issue, as Plaintiffs' complaint avers facts contrary to the exceptional circumstances that would warrant the application of the doctrine.

It is well-settled that the equitable tolling doctrine represents an exception to the rule, "reserved for exceptional cases." Chico-Velez v. Roche Products, Inc., 139 F.3d 56, 58-59 (1st Cir. 1998); see also Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir. 2007). The burden of showing that the doctrine applies therefore rests with its proponent. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). And such burden is met with proof of both the exercise of reasonable diligence in pursuing the underlying rights as well as the concurrence of extraordinary circumstances preventing compliance with an applicable deadline. Id. Accordingly, in determining whether equitable tolling applies, courts in this Circuit must consider the following factors: "(1) a lack of actual notice of a time limit; (2) a lack of constructive notice of a time limit; (3) diligence in the pursuit of one's rights; (4) an absence of prejudice to a party's opponent; and (5) the claimant's reasonableness in remaining ignorant of the time limit." Jobe v. I.N.S., 238 F.3d 96, 100 (1st Cir. 2001). Here, Plaintiffs' complaint satisfies none of these factors.

For starters, there is no controversy that Plaintiffs had actual notice of EMTALA's

---

[4] The Court is aware of no case law holding that EMTALA is subject to equitable tolling.

limitation period. The affidavit Plaintiffs filed in this case and the letters sent to Defendants before filing suit show as much. It is also undisputed that Plaintiffs understood the consequences of allowing a statutory period to lapse. In this regard, Plaintiffs' letters to Defendants stated: "Since the above-mentioned claimants want to have more time to analyze the nature and extent of their claims, this letter must be deemed as an interruption [to the applicable statutory periods]." Id. Moreover, a practicing attorney himself, co-plaintiff Paul E. Calvesbert cannot credibly claim that he ignored those consequences. These facts dispose of factors one, two, and five of the equitable tolling analysis.

Plaintiffs bet their tolling argument on the third factor—diligence in the pursuit of one's rights. On this front, Plaintiffs contend that they "pursued their rights diligently and that some extraordinary circumstances—the delay in receiving the expert report in spite of their continuous efforts to receive it within the two-year statute of limitations—stood in their way." Docket # 47, p 3. This Court, however, concurs with the analysis that other sister courts have espoused to reject this same argument. See Negron-Santiago v. San Cristobal Hosp., 764 F.Supp.2d 366, 371-72 (D.P.R. 2011) (finding claim that plaintiffs did not have access to medical records insufficient to satisfy the exceptional circumstances test); Monrouzeau v. Associacion del Maestro, 354 F.Supp. 2d 115, 119 (D.P.R. 2005) (finding delay in obtaining necessary expert report insufficient for equitable tolling purposes), aff'd on other grounds 53 Fed. Appx. 7 (1st Cir. 2005). More significant yet, Plaintiffs' complaint aver facts that defeat their contentions.

For example, the record is uncontested that Plaintiffs delayed nineteen months between Mr. Calvesbert's death and the retention of their medical expert. Nevertheless, none of Plaintiffs' submissions contain an explanation to account for such an unreasonable delay. Nor do Plaintiffs' submissions explain why they took more than a month to send the expert's report to their attorney, or why their attorney filed this suit four months after receiving the report. Furthermore, even though Plaintiffs proffer that they attempted to expedite the issuance of the expert report through follow-up communications, none of their submissions

state that the expert was required to submit the report before the lapse of EMTALA's statute of limitations. Plaintiffs' complaint actually points to the opposite direction. After all, if Plaintiffs believed that their letters had effectively tolled EMTALA's statute of limitations, they had no reason to impose a five-month deadline on their expert.[5]

Last, but not least, Plaintiffs' submissions show that no valid reason existed to defer the filing of this suit until obtaining an expert report. First, co-plaintiffs Paul E. Calvesbert and his mother witnessed many of the facts underlying this case, as they accompanied Mr. Calvesbert while he was being treated at the hospital. Docket # 36-1. The letters Plaintiffs sent to Defendants intending to toll EMTALA's statute of limitations contain a detailed account of such facts and confirm this point. Second, Plaintiffs had a medical doctor in their corner—co-plaintiff Dr. David J. Calversbert (a pediatric surgeon)—who presumably had the basic medical knowledge needed to form an informed opinion about the treatment Mr. Calvesbert received from Defendants. Plaintiffs therefore had all the tools needed to timely plead a prima facie case under EMTALA—they knew the essential facts and had both the basic legal and medical knowledge to do so. At this late hour, they shall not be heard to the contrary; specially given the fact that Plaintiffs were twice allowed to amend the complaint after Defendants moved to dismiss but failed to address most of the factual issues discussed here. See Ibarzabal v. Morgan Stanley DW, Inc., 333 Fed. App'x 605, 607 (2d Cir. 2009) (dismissal affirmed where plaintiff received notice of affirmative defense but failed to address it in an amended complaint).[6]

---

[5] As stated above, Mr. Calvesbert died on September 22, 2008, and Plaintiffs hired their expert on April 28, 2010. By that time, there were less than five months left for the lapsing of EMTALA's two-year statute of limitations.

[6] The parties failed to address the fourth factor of the equitable tolling analysis—i.e., an absence of prejudice to a party's opponent—and the Court need not address it in light of the previous discussion. The Court nonetheless notes that on the record available at this stage Plaintiffs would be hard pressed to make a persuasive showing concerning this factor.

8

**Conclusion**

For the reasons discussed above, Plaintiffs' claims under EMTALA are **DISMISSED with prejudice**. Having so decided, Plaintiffs' supplemental state-law claims must also be **DISMISSED.** See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit."). Plaintiffs may pursue those claims in state court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of December, 2011.

> s/ *Salvador E. Casellas*
> SALVADOR E. CASELLAS
> U.S. Senior District Judge